COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,

v.

Boynton MERRILL, Jr., and Marian Merrill,
his wife, Appellees.

Court of Appeals of Kentucky.

May 1, 1964.

Rehearing Denied Nov. 20, 1964.

John B. Breckinridge, Atty. Gen., William L. Lamkin, Jr., Asst. Atty. Gen., F. D. Curry, Atty. for Dept. of Highways, Frankfort, for appellant.

William L. Sullivan, Dorsey & Sullivan, Henderson, for appellees.

WADDILL, Commissioner.

Upon appeals to the circuit court from a county court judgment of $276,130.00, Boynton Merrill, Jr. and his wife were awarded $253,280.00 for 47.68 acres of their land taken by the Commonwealth for the construction and relocation of U. S. Highway 41 as a nonaccess bypass around the city of Henderson, the placement of a nonaccess interchange with U. S. Highway 60, and the rerouting of Kimsey Lane over the bypass, and were awarded $97,588.00 as damages to the remainder of their property for a total of $350,868.00.

The Merrills own and operate a farm located northeast of Henderson, which, prior to this condemnation proceeding, comprised 398 acres. The farm was divided into two tracts which, for convenience, we shall refer to as tract A and tract B. Tract A contained 98 acres situated between the "Y" junction of U. S. 41 and U. S. 60. Tract B contained 300 acres bounded on the northwest side by U. S. 60 (across from tract A) and on the southwest side by Kimsey Lane.

As a result of this condemnation tract A now contains a one-acre tract west of the bypass and a 75-acre tract east of the bypass and north of U. S. 60. Tract B now

contains an 18-acre tract west of the bypass, a one-acre tract south of the bypass and west of Kimsey Lane and a 254-acre tract east of the bypass. (These acreages have been rounded to the nearest whole acre.)

■ The Commonwealth contends the trial judge abused his discretion in permitting the use of certain exhibits prepared by Boynton Merrill. We do not agree. A chart showing the computation used by him in determining the difference between the value of his farm before and after the taking was shown to the jury while he was testifying. This chart is analogous to a blackboard demonstration and its use is preferable since it may be preserved for review upon appeal. Meglemry v. Bruner, Ky., 344 S.W.2d 808.

■ Merrill also used a map upon which different areas of his farm were shown along with the values which he assigned to each in his testimony. The Commonwealth's objection is directed to the designation of these areas, which it calls "lots" and "subdivisions," and to the notations of value. Since it was shown that this farm has residential and commercial developments on three sides and was reasonably adaptable for similar uses, it was competent for Merrill to premise the before and after valuations of his land on the value of each area. Commonwealth, Dept. of Highways v. Treadway, Ky., 346 S.W.2d 296. This designation of general areas does not show a subdividing of the property. We believe, as did the trial judge, that this map was of assistance to the jury in understanding how Merrill valued his land prior to the condemnation.

■ Further objection is made to the use of 38 colored 35 mm transparencies or slides depicting the land taken, aerial views of the farm and commercial and residential improvements on land adjacent to the farm. The condemnation took place in the spring and the slides were made in the following summer. The photographer testified that, except for the seasonal foliage change, the slides fairly represented the condition of the property as it was on the date of the taking. The jury viewed the land during the trial. Under the circumstances shown we find this contention to be without merit.

■ It is contended that the trial judge erred in permitting witnesses for the Merrills to testify to prices paid in 3 comparable sales which occurred 2 to 4 months after the taking of the Merrills' property. In Commonwealth v. Begley, 272 Ky. 289, 114 S.W.2d 127, we approved evidence of "sales of land of like character, similarly situated and at a point of time not too remote." The Commonwealth did not produce any evidence of a prejudicial change in property valuation within four months after the taking and therefore the trial judge did not abuse his discretion in allowing the witnesses to testify concerning these particular sales. Stewart v. Commonwealth, Dept. of Highways, Ky., 337 S.W.2d 880.

■ It is contended that the trial judge erred in not permitting Merrill to be questioned about any valuations placed on his property for tax purposes. We have held that evidence of the valuation which a landowner places on his property for tax purposes is a proper factor to be considered by the jury in determining fair compensation. Commonwealth, Dept. of Highways v. Lanter, Ky., 364 S.W.2d 652. Merrill testified on avowal that he had not listed his property for tax purposes. Since no exhibits or witnesses were offered to contradict this statement the trial court properly refused to allow further questioning of Merrill on this subject.

■ There is no merit to the Commonwealth's contention that the Merrills are not entitled to any damages because they accepted the farm knowing public highways might someday be built across it. Such a rule would place the Commonwealth in the enviable but unwarranted position of taking, without compensation to anyone, any property transferred after the donee or grantee was aware of pending public improvements.

It is argued that both the awards for the land taken and for the damages to the remaining property are excessive because they are not supported by competent evidence. Looking first to the $253,280.00 awarded for the land taken, the estimates of the value of the land taken were $95,500.00 and $118,047.00 for the Commonwealth and $339,040.00 to $574,113.00 for the Merrills. This variance is directly attributable to the method of appraisal. The Commonwealth's witnesses used a per acre valuation although the evidence established that land along the major highways near Henderson usually sold for commercial purposes on a front foot basis. The Merrills' witnesses valued the land adjacent to the highways on a front foot basis and the remainder on a per acre basis. In view of the fact that it was shown the Merrills' land was saleable for commercial, residential and farm uses, the method of appraisal employed by these witnesses was proper and their valuations convincingly support the jury's award for the land taken.

The highest resulting damages appraised by the Commonwealth's witnesses were $54,000.00, while for the Merrills they ranged as high as $249,750.00. Although three of the Merrills' witnesses gave testimony that amply supports the resulting damages awarded, the Commonwealth contends that damages attributed to the smaller segment remaining in tract A are based on an incompetent factor and are unbelievable. It was shown that prior to this taking about 24,000 cars a day passed the portion of tract A where U. S. 41 and U. S. 60 converged and that this area was adjacent to Henderson. The evidence shows that this area was extremely desirable for commercial use. While part of it was taken by the Commonwealth, a triangular segment about 600 feet along U. S. 41, extending back at its base 143 feet, was not condemned. This 600 feet of land in the before valuations by one of the Merrills' witnesses was valued at $150.00 per front foot for a depth of 200 feet (the usual depth of commercial land in that area) or $90,000.00, but after the taking

this land has an average depth of only 72 feet. Since 72/200 of the original land worth $90,000.00 remains, only $32,400.00 is used for comparison purposes. This triangle of remaining land was shown to be worthless for any normal commercial use so in the computation of after value it was valued at $30.00 per front foot which would be $6,480.00 or a resulting damage of $25,920.00, an amount which appears to be reasonable.

The section of U. S. 41 on which this land fronts is being closed at each end, but the Commonwealth's witnesses testified that it would build a cul-de-sac at one end and would connect it to nearby city streets at the other end so as not to landlock it. The Commonwealth contends that the trial judge erred in overruling its objection to Merrill's testimony that he considered the closed road in arriving at his damages. Merrill's erroneous consideration of the road being closed was not prejudicial since his estimate of approximately $26,000.00 damage to this segment is justified solely by the fact that its commercial worth was destroyed.

The balance of the damages are supported by evidence relating primarily to the devaluation of the remaining land due to its division into 5 tracts brought about by the condemnation and by the loss of access to Highways U. S. 41 and U. S. 60. Inasmuch as the rights of ingress and egress were condemned in this action, there is no objection to testimony concerning the damages attributable to loss of access. Commonwealth, Dept. of Highways v. Carlisle, Ky., 363 S.W.2d 104. We conclude there was sufficient competent evidence to support the award of resulting damage. [We observe that this case was tried before the effective date of our rule against separation of resulting and taking damages set forth in Commonwealth, Dept. of Highways v. Sherrod, Ky., 367 S.W.2d 844.]

The Commonwealth further contends that the trial judge erred in not in-

structing that the value of the property before the taking was the value when it became generally known the improvements would be made. The answer to this contention is that the Commonwealth offered instructions which specifically required the jury to find damages as the difference between the reasonable market value of the property immediately before and after the condemnation on March 28, 1960. The instructions that were given were substantially the same as those offered by the Commonwealth. Under this state of the record there is no basis to support the claim that the instructions were erroneous.

Finally the Commonwealth contends that the verdict is so excessive that it appears to have been given under the influence of passion or prejudice in disregard of the evidence. It is urged that Merrill was not qualified to give an opinion as to the value of his property and that all of the Merrills' expert witnesses failed to give sufficient basis for their opinions. That Merrill has closely observed comparable sales over a period of years and made some study of appraisal methods removes any doubt as to his qualifications. See Commonwealth, Dept. of Highways v. Fister, Ky., 373 S.W.2d 720. The other four witnesses testifying to the value of the Merrill farm and the damages to it were actively engaged in the real estate business, were acquainted with the property taken, and were familiar with land values in that area. Needless to say their qualifications satisfied the criterion set out in Commonwealth, Dept. of Highways v. Taylor, Ky., 368 S.W.2d 732. Being satisfied with the competency of this testimony we need only determine the sufficiency of its probative value. Commonwealth, Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472. After testifying to before and after values of the Merrills' farm, these witnesses gave estimates of total damages ranging from $384,-800.00 to $730,727.00 based upon their knowledge of this land, comparable sales in the area and the information they had concerning its present saleability.

The Commonwealth condemned approximately 5,500 feet of valuable frontage on two heavily traveled highways to build its nonaccess bypass and interchange as well as some frontage on Kimsey Lane. In view of the evidence of the value of similar nearby land and considering that the land taken is on the very edge of Henderson and that the commercial desirability of the remaining land is now practically destroyed and its residential adaptability is considerably lessened, we cannot say the award was given as a result of passion or prejudice or that it is excessive as a matter of law.

The judgment is affirmed.

PALMORE, J., not sitting.